UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALYSSA A. WRIGHT<br>Plaintiff | : | CIVIL ACTION |
| v. | : | NO. 3: 02-CV 1398 (AWT) |
| PATRIC DELCIOPPO, IRENE D. TUREK,<br>THOMAS M. SMYTH, JR and<br>WOLCOTT BOARD OF EDUCATION<br>    Defendants | : | DECEMBER 12, 2003 |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

FACTS:

This action arises out of an incident that occurred on March 27, 2002 at Wolcott High School in Wolcott, Connecticut. Plaintiff, a student there, alleges that she was unfairly disciplined as the result of an incident involving another student. Plaintiff received a one-day suspension for uttering a racial epithet at another student. She does not deny doing this, but rather contends that it was unfair to punish just her for the incident because she was merely reacting to harassment from other students. Plaintiff further contends that she had been harassed by other students prior to the March 27, 2002 school incident and continued to be harassed at school when she came back from suspension, but the Defendant school administrators took no action.

The Defendants have denied the material allegations of Plaintiffs' complaint and raised the defense of qualified governmental immunity.

STANDARD OF REVIEW:

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party must not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. To present a "genuine" issue of material fact, there

must be contradictory evidence such that a reasonable jury could return a verdict for the non-moving party.

If the nonmoving party has failed to make sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Birdsall v. City of Hartford</u>, 249 F. Supp. 2nd 163, 168-169 (D.Conn 2003). (Internal quotation marks and citations omitted).

ARGUMENT AND LAW:

The Defendants move, pursuant to F.R.C.P. 56(c), for summary judgment on Plaintiff's Complaint. This is a civil rights action alleging disparate treatment of a Town of Wolcott High School student. The Defendants are the Wolcott Board of Education and various School administrators. The gravamen of Plaintiff's complaint is 1. that she was subjected to racially-motivated disparate treatment in violation of her equal protection rights when the Defendants failed to mete out equivalent discipline to her and another student who were involved in altercations at school and, 2. that the school failed to enforce school policy against other students to protect her from harassment.

I. EQUAL PROTECTION CLAIMS

An equal protection claim has two essential elements; (1) the plaintiff was treated different from others similarly situated, and (2) this different treatment was motivated by an

intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. Diesel v. Town of Lewisboro, 232 F.3d 92,103 (2nd Cir. 2000). The Plaintiff's case fails on both elements.

The Defendants have established a non-discriminatory reason for imposing discipline on Plaintiff. See Affidavit of Patric DelCioppo paragraphs 7-10. Plaintiff directed a racial epithet at another student. This is clearly conduct for which the School can legitimately impose discipline. See Bethel School District, 478 U.S. at 683-685, 106 S.Ct. 3159 (recognizing that the First Amendment does not prohibit school officials from prohibiting vulgar or offensive speech); see also, Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (reasoning that a "school need not tolerate student speech that is inconsistent with its 'basic educational mission ... even though the government could not censor similar speech outside the school' "). Therefore, the Defendants had a legitimate basis to impose discipline on Plaintiff.

The affidavit of Assistant Principal Patric DelCioppo further establishes that the Defendant Town imposed discipline on the other student involved that was equivalent to that imposed on Plaintiff. Because plaintiff bases his equal protection claim on an allegation of selective enforcement, he must show that he was subjected to selective enforcement of the law "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). A person bringing an action under the Equal Protection Clause must show

intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. *See* <u>Huebschen v. Department of Health and Soc. Servs.</u>, 716 F.2d 1167, 1171 (7th Cir.1983). To state an equal protection claim for selective enforcement, plaintiff must show: (1) that he was selectively treated compared with others similarly situated, and (2) that the selective treatment was prompted by an impermissible consideration, such as membership in a suspect class, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure. *See* <u>Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir.1996)</u>; <u>Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir.1995)</u>; <u>LaTrieste Restaurant & Cabaret v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir.1994)</u>.

    The heart of Plaintiff's equal protection claim is that her constitutional rights were violated because the school code of conduct was applied to *her* when they were not applied equally to *others*. However, "[t]here is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished." <u>Futernick v. Sumpter Township, 78 F.3d 1051, 1056 (6th Cir.1996)</u>. Even if plaintiff could prove her allegation that at least one other student went undisciplined for uttering a racial epithet abuse, failure to proceed against others who are comparably situated is not *by itself* a basis for finding a denial of equal protection. <u>Zahra, 48 F.3d at 684</u> (emphasis added). "Equal protection does not require that all evils of the

5

same genus be eradicated or none at all." *372 <u>Zahra, 48 F.3d at 684</u> (quoting <u>LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir.1980)</u>).

To sustain an equal protection claim based on alleged selective enforcement, plaintiff must also show invidious discrimination. The fact that there may have been instances where other students were not disciplined in an identical manner as Plaintiff not in itself make out an invidious discrimination forbidden by the Clause. "A purpose to discriminate must be present which may be proven by systematic failure to discipline of the "favored" race or by unequal application of the law to such an extent as to show intentional discrimination." <u>Akins v. Texas, 325 U.S. 398, 403- 404, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692, 1696 (1945)</u>. Plaintiff has offered no such proof and so her claims must fail.

II. <u>FAILURE TO PROTECT CLAIMS</u>

In deciding whether the plaintiffs have pled a cognizable claim, we must determine whether they can allege the deprivation of a constitutional right. <u>Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979)</u>. To analyze the validity of plaintiffs' assertions of Fourteenth Amendment deprivation, we look first to <u>DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)</u>. In <u>DeShaney,</u> the Wisconsin Department of Social Services received several reports that a four-year old boy, Joshua, was suffering abuse at the hands of his father. Despite these reports, the State failed to remove Joshua from his father's custody. Eventually, Joshua's father struck him so severely the boy suffered permanent brain damage. Joshua

and his mother brought suit, alleging the State had violated the Fourteenth Amendment by failing to intervene on his behalf.

Holding that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors," the Supreme Court flatly rejected plaintiff's argument. 489 U.S. at 195, 109 S.Ct. at 1003. However, the DeShaney Court fashioned a narrow exception to this general rule, holding a duty of protection may arise when the State imposes limitations upon an individual to act on his or her own behalf. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect [an individual's] liberty interests against harms inflicted by other means." Id. at 200, 109 S.Ct. at 1006.

Nonetheless, DeShaney left undefined the precise measure of state restraint that engenders an individual's right to claim a corresponding affirmative duty.

In Maldonado v. Josey, 975 F.2d 727 (10th Cir. 1992), cert. denied, 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993), an unsupervised student, Mark Maldonado, accidentally choked to death in a school cloakroom. His father filed a Fourteenth Amendment claim under 42 U.S.C. § 1983, asserting that Mark's death had occurred as a direct result of his teacher's failure to supervise her students. Reasoning substantive due process was not directly implicated, the Maldonado court concluded "compulsory

7

attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school." 975 F.2d at 732; accord Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir.1993) ("state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates"); D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364 (3d Cir.1992) (en banc) (compulsory attendance laws do not create special relationship), cert. denied, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); J.O. v. Alton Community Unit Sch. Dist. 11, 909 F.2d 267, 272-73 (7th Cir.1990) ("Schoolchildren are not like mental patients and prisoners such that the State has an affirmative duty to protect them.").

The extension of liability for failure to protect against student-to-student behavior does not clearly flow from prior harassment and duty to protect cases. Further, attempts to extend constitutional protections to such cases have been controversial and consistently unsuccessful. Mennone v. Gordon 889 F.Supp. 53 (D.Conn.,1995) See, e.g., Walton v. Alexander, 44 F.3d 1297 (5th Cir.1995); Graham v. Independent School District No. I-89, 22 F.3d 991 (10th Cir.1994); Dorothy J. v. Little Rock School District, 7 F.3d 729 (8th Cir.1993). Therefore, the individual Defendants would be entitled to qualified immunity on Plaintiff's failure to protect claims.

CONCLUSION:

As set forth above there is no genuine issue of material fact in dispute and the Defendants are therefore entitled to judgment as a matter of law.

THE DEFENDANTS
BY

_____
Joseph M. Musco
Fed ID# CT-00495
Smith, Ketaineck, Robertson & Musco
9 Washington Avenue, Suite 3-A
Hamden, CT 06518
Tel: 203-288-2323
Fax: 203-288-5855
Joe.Musco@StPaul.com

### CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing appearance has been mailed or hand delivered this 16rd day of December, 2003 to:

John R. Williams
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510

_____
Joseph M. Musco