UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALYSSA A. WRIGHT | : | |
| | : | |
| VS. | : | |
| | : | NO. 3:02CV1398(AWT) |
| PATRIC DelCIOPPO, | : | |
| IRENE D. TUREK, | : | |
| THOMAS M. SMYTH, JR. and | : | |
| WOLCOTT BOARD OF EDUCATION | : | MARCH 19, 2005 |

**<u>AMENDED COMPLAINT</u>**

1. This is an action to redress the deprivation of rights secured to the plaintiff by the Constitution and laws of the United States and the State of Connecticut. The defendants subjected the plaintiff to disparate treatment as a public school student in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

2. Jurisdiction of this court is invoked under the provisions of Sections 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

3. During all times mentioned in this action, the plaintiff was a senior at Wolcott High School in Wolcott, Connecticut. The plaintiff was born on April 13, 1984, she is a caucasian, and she graduated from Wolcott High School in June of 2002.

1

4. During all times mentioned in this action, the defendant DelCioppo was an assistant principal at the Wolcott High School, the defendant Turek was the principal of the Wolcott High School, and the defendant Smyth was the Wolcott Superintendent of Schools. All of these defendants were acting in their official capacities but all are sued only in their individual capacities.

5. During all times mentioned in this action, the defendant Wolcott Board of Education was a governmental entity in the State of Connecticut in charge of the public schools of the Town of Wolcott, and was the employer of the other defendants.

6. At all times mentioned herein, the defendants DelCioppo, Turek and Smyth were acting as the agents, servants and employees of the defendant Wolcott Board of Education within the scope of their agency and employment and for the benefit of the Wolcott Board of Education.

7. During all times mentioned in this Complaint, the defendants were acting under color of law, that is, under color of the constitution, statutes, laws, rules, regulations, customs and usages of the State of Connecticut.

8. At all times mentioned in this Complaint, the defendants acted jointly and in concert with each other. Each defendant had the duty and the opportunity to prevent the unlawful actions of the other defendants but each defendant failed and refused to perform such duty, thereby proximately causing the injuries herein complained of.

9. The plaintiff was at all times an outstanding honor student at Wolcott High School, a credit to both herself and her school, and never a disciplinary problem.

10. During the plaintiff's senior year, she became the target of racial harassment and abuse by certain African-American girls who also were students at the school. Beginning in February of 2002, these girls on a daily basis described the plaintiff to her face as "stupid white girl," "ugly white girl," and "stupid white bitch."

11. This racist abuse and harassment of the plaintiff was actively encouraged, sponsored and supported by Mr. Pape, a teacher at the Wolcott High School.

12. The defendants, at various times during the school year, came to have actual knowledge of the said racial harassment of the plaintiff and of the fact that their agent, servant and employee, Mr. Pape, was encouraging, supporting, and indeed even inciting such harassment.

13. On March 27, 2002, at Wolcott High School, the plaintiff was the victim of a racially-motivated physical assault by two of the African-American girls who had been harassing her throughout the school year. Calling the plaintiff a "stupid white girl," they struck the plaintiff from behind causing her to fall to the floor and sustain physical injuries.

14. As her assailants walked away laughing following the said assault, the plaintiff quietly uttered a racial epithet. One of the assailants then screamed at the plaintiff: "I will kill you, you stupid white bitch!"

15. All of the above facts were promptly brought to the attention of the defendants. A meeting between the plaintiff and Laurana Joyner, one of the two assailants, took place in the office of defendant DelCioppo within minutes following the

incident described in Paragraph 14.  At that meeting, both girls confirmed all of the above facts to defendant DelCioppo.  Joyner stated to DelCioppo in the presence of the plaintiff that she hates the plaintiff because the plaintiff "is not urban and is an ugly white girl."  Joyner further confirmed to DelCioppo that her hatred of the plaintiff was related to an incident involving Mr. Pape in which Pape had participated with the African-American girls in spraying a tomato on the plaintiff in the cafeteria and the plaintiff told Pape he was being immature.  Joyner told DelCioppo that she and her friends were angry at the plaintiff because she had "embarrassed" Pape.  Joyner further stated to the plaintiff in DelCioppo's presence: "I will call all my urban friends and they will come here and kick your ass."

16.  In response, the defendants later on the same day suspended the plaintiff, and only the plaintiff, from school.  They ordered her to leave the school premises immediately and threatened her with arrest for "a hate crime."

17.  Later that day, defendant DelCioppo stated to the plaintiff's mother that he considered the incident in which the plaintiff was sprayed with tomato juice by Mr. Pape and the African-American girls to be "humorous", stated not only that he had no intention of taking any action against anyone other than the plaintiff but that he considered that he had "the upper hand here" and that anything the plaintiff might say would be "taken with a grain of salt" and disregarded.

18.  Upon information and belief, the defendants thereafter imposed identical discipline upon one, but only one, of the two girls who had assaulted the plaintiff as had

4

been imposed upon the plaintiff, thereby subjecting a victim and a perpetrator to identical treatment and permitting another perpetrator to get away with her wrongdoing.

19. All of the above facts were promptly thereafter brought directly to the attention of the defendant Smyth and the defendant Board of Education, and said defendants endorsed, ratified and confirmed the disparate treatment of the plaintiff described above.

20. Upon the plaintiff's return to school following her suspension, the racial harassment to which she had been subjected continued. Her assailants, despite the promise of the defendant Turek that they would be separated from the plaintiff, continued to approach and intimidate the plaintiff. For a period of several days in May, the phrases "Alyssa Wright is a racist bitch who deserves to be shot" an "I hate Alyssa Wright" were written in plain view of all students and faculty in the high school lecture hall. Although these facts also were brought to the attention of the defendants, no action whatsoever was taken to punish the perpetrators. Had the plaintiff done such a thing to or regarding either of the girls who had assaulted her, she would have been disciplined severely by the defendants.

21. As a result of the foregoing, the plaintiff has suffered severe emotional distress.

22. In the manner described above, the defendants have intentionally, irrationally, unreasonably and maliciously subjected the plaintiff to treatment which differed from that accorded to other similarly-situated students and have thereby

5

deprived the plaintiff of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.

23. Alternatively, the defendants in the manner described above have discriminated against the plaintiff on the basis of her race, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code.

24. The conduct of the defendants described above was extreme and outrageous and was carried out with the knowledge that it probably would cause the plaintiff to suffer emotional distress, in violation of Connecticut law.

WHEREFORE, the plaintiff claims judgment against the defendants and each of them, jointly and severally, for compensatory damages, punitive damages, attorney fees and costs, all as provided by Sections 1983 and 1988 of Title 42 of the United States Code and the common law of the State of Connecticut.

        THE PLAINTIFF

BY:_____
       JOHN R. WILLIAMS (ct00215)
       51 Elm Street
       New Haven, CT 06510
       203/562-9931
       FAX: 203/776-9494
       E-Mail: jrw@johnrwilliams.com
       Her Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Joseph M. Musco, Esq., 9 Washington Avenue, Suite 3-A, Hamden, CT 06518; and Jeffrey G. Schwartz, Esq., Law Offices of Scott B. Clendaniel, P. O. Box 2138, Hartford, CT 06145-2138.

_____
JOHN R. WILLIAMS