UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALYSSA A. WRIGHT | | |
|     Plaintiff | : | CIVIL ACTION 3:02CV1398 AWT |
| V. | : | |
| PATRIC DELCIOPPO,<br>IRENE D. TUREK,<br>THOMAS M. SMYTH, JR. AND<br>WOLCOTT BOARD OF EDUCATION | | |
|     Defendants | : | January 18, 2006 |

RENEWED MOTION FOR SUMMARY JUDGMENT (QUALIFIED IMMUNITY)

I.   INTRODUCTION

Pursuant to the court's order dated August 12, 2005, the undersigned defendants move, pursuant to F.R.C.P. 56 and Rule 56(a)(1) of the Local Rules of Civil Procedure, for summary judgment, on behalf of all defendants, for the reasons set forth herein. A Statement of Uncontroverted Facts is filed herewith. The basis of this motion is that pursuant to the plaintiff's Amended Complaint, dated 3/22/05, where the plaintiff alleges (inverse) discrimination on the basis of race, claiming treatment "which differed from that accorded to other similarly situated students" (Amended Complaint dated 3/19/05, par. 22), the defendants are entitled to **qualified immunity**.

II.   LEGAL STANDARD

Summary judgment is to be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) F.R.C.P. A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby Inc., 477 U.S. 242 at 248 (1986). In this case, based on the information that was known to the defendants, at the time when discipline (a one day suspension) was imposed upon the plaintiff and her alleged assailant, the undersigned defendants contend, as a matter of law, that an objectively reasonable school official such as Mr. DelCioppo (defendant), could and would have acted in the way he did.

III.   FACT SUMMARY

On 3/27/02, the plaintiff, a student at Wolcott High School, uttered a racial epithet (insult) directed toward another student (see deposition of William Tully Haywood, pp. 7-8, attached as Exhibit B; and Affidavit of Patric DelCioppo, attached as Exhibit A).

At no time prior to 3/27/02 did the plaintiff bring to the attention of any of the defendants any claim of harassment against her. (See Affidavit of Patric DelCioppo, attached as Exhibit A). At all times subsequent to 3/27/02, the defendants investigated any complaints by plaintiff of harassment and took action where deemed appropriate. (See Affidavit of Patric DelCioppo, attached as Exhibit A).

Both the plaintiff and the other student involved in the incident on 3/27/02 were given the equivalent discipline of a one day suspension each. (See Affidavit of Patric DelCioppo, attached as Exhibit A).

The administration of the Wolcott High School follows a student handbook which is distributed to all students and parents, listing offenses and a range of possible consequences. There is necessarily some narrow discretion or judgment by school officials (Id.). According to the handbook, either verbal or physical threats or harassment may lead to suspension. (Id.)

On March 27, 2002, the school security guard reported an incident in which the plaintiff yelled "I hate those fucking niggers" toward an African-American student, which student began advancing toward the plaintiff, but was held back by other students. When questioned by Mr. Del Cioppo (Assistant Principal), the plaintiff reported that she had made the aforesaid statement out of frustration, because the other student had harassed her on prior occasions and had pushed another student. (Id.)

Based on the school's policy, and after Mr. Del Cioppo had met with the Principal, Irene Turek, a judgment call was made by them; a decision to suspend the students (both) for one day. There was no apparent physical injury and there appeared to be no strong evidence to contradict the other student (Laurena Joyner's) contention that any physical contact which she was accused of committing in the crowded hallway, was accidental. (Id.)

The plaintiff's parents were advised of their appeal rights. Mr. Del Cioppo did not report the incident to the police because, as a school administrator, he had been trained by the police that in order to make an assault complaint (as to Laurena Joyner), he must have proof of an injury intended by the student. (Id.) He did report the alleged shoving (by Joyner) to the school resource officer (who would then be on notice in the event of future problems.) (Id.)

IV.     ARGUMENT

The Supreme Court has established a good faith **qualified immunity doctrine**, which protects government officials, including school officials, who are performing discretionary functions, for civil liability or damages insofar as their conduct does not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 73 L. Ed. 2nd 396 (1982); Seal v. Morgan, 229 F. 3rd 567 (6th Cir. 2000); Bloch v. Ribair, 156 F. 3rd 673 (6th Cir. 1998); Rich v. Dollar, 841 F. 2nd 1558 (11th Cir. 1988); Foo v. Indiana University, 88 F. Supp. 2nd 937 (S.D. Ind. 1999); Arrington v. Eberhart, 920 F. Supp. 1208 (M.D. Ala. 1996).

In this case, the information known to the school official responsible for discipline was limited, but reasonably appeared to involve verbal abuse, of a racial nature, being committed by one student and, some form of threatening behavior by the other. It was objectively reasonable, based on the school's policy (see Exhibit A), to issue single day suspensions to both students. This is true even assuming that further investigation, initiated by plaintiff's parents, may have resulted in more detailed information and/or further activity on the part of the school.

The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335 (1986). The rationale behind the immunity doctrine is that civil liability actions for damages against school officials "*would unfairly impose upon the school decision maker, the burden of mistakes, made in good faith, in the course of exercising discretion within the scope of official duties*." Wood v. Strickland, 420 U.S. 308 at 319 (1975). Viewed in a light most favorable to the plaintiff, the conduct involved in this case, involves an identical minimal sanction for arguably unequal conduct where the decision process was controlled by no case law whatsoever. To attach legal consequences, under

the Civil Rights Act to a reasonable judgment call (a racial epithet vs. a questionable shoving incident; which is more culpable?  How should order best be maintained under the Student Handbook Guidelines?) involves a decision where reasonable minds could differ and no case law provides clear guidance, even nearly 4 years later.  The imposition of monetary costs for conduct which was not "*unreasonable in the light of all the circumstances, would undoubtedly deter even the most conscientious school decision maker from exercising his judgment independently, forcefully and in a manner best serving the long term interests of the school and the students.*" Id. at 319-20.

In Wood, the United States Supreme Court stated that the official must act sincerely and with a belief that he is doing right.  Only where the official acts in violation of a student's constitutional rights, in a way that is not "justified by ignorance or disregard of settled, indisputable law" does the official lose immunity.  Id. at 321-22.  It is presumed that a school official is acting in good faith, until such time as there is a violation of a **clearly established** federal constitutional right.  Ziegler v. Jackson, 716 F. 2nd 847 (11th Cir. 1988).  The defendants were following established race-neutral policy guidelines.  The notion that the plaintiff Alyssa Wright's conduct was clearly less culpable than Lorena Joyner's at the time of her suspension is something reasonable school principals (or even legal scholars) could easily debate.  For that reason, qualified immunity protects the undersigned defendants.

Undoubtedly, the Equal Protection clause requires that public institutions, such as schools, "treat similarly situated individuals in a similar manner."  Buchanan v. City of Bolivar, 99 F. 3rd 1352 at 1360 (6th Cir. 1996).  However, the plaintiff must demonstrate the existence of

purposeful discrimination or deliberate indifference on the part of the school official(s), <u>Crispim v. Athanson</u>, 275 F. Supp. 2nd 240 at 248 (D. Conn. 2003), <u>Gant v. Wallingford Board of Ed.</u>, 195 F. 3rd 134 at 140 (2nd Cir. 1999).  The deliberate indifference standard does not transform every school disciple decision into a jury question; rather, the question is whether the school official's action was <u>clearly</u> unreasonable in light of known circumstances.  <u>Crispim</u> Supra at 248, <u>Gant</u> Supra at 140-41.  In the instant case, no discipline was issued which would qualify as violative of the reasonability standards set forth in <u>Crispin</u> and <u>Gant</u>, Supra.

The case of <u>Heller v. Hodgin</u>, 928 F. Supp. 789 (S.D. Ind. 1996 S. Dist.) involved a fact pattern very similar to the instant case.  In <u>Heller</u>, two high school students were involved in a verbal altercation, when one cut ahead in the lunch line.  Both were suspended for five days because of their use of vulgarities and fighting words.  <u>Id</u>. at 792-93.  Both were suspended for an equal period of time.  One student brought a claim against school officials for infringing her equal protection right, since she was an honor roll student with no discipline problems and the other students was a troubled student with a history of discipline issues.  The school officials were found to be immune from suit, because there was no evidence that the school has specifically singled out the plaintiff for unequal treatment.  There was no racial animus on the part of the officials.

No racial animus has been demonstrated in this case on the part of the <u>defendants</u> in the instant case.  On 3/27/02, the plaintiff directed her statement "I hate those fucking niggers" toward another student in the presence of third persons.  This was reasonably deemed violative of school policy.  Prior to that time, there is no evidence that the plaintiff had brought to the

attention of any of the defendants any claim of harassment by other students. Both the plaintiff and the student she claimed to have physically harassed her on 3/27/02, were given discipline of a one day suspension. Additional investigation was made of plaintiff's claim of harassment, <u>after</u> the suspensions issued on 3/27/02. No student was expelled. At the time of the said suspensions, the information which had been provided to the defendants was that the plaintiff was merely retaliating for racial slurs used at her and harassment on the part of the other suspended student. There was no documentation of or information reported to the school official (Mr. DelCioppo) indicating any prior physical assaults on the part of the second student.

In <u>Jensen v. Reeves</u>, 45 F. Supp. 2d. 1265 (1999), parents of a student who had been suspended, for alleged misconduct, brought a 1983 action against school officials, situated in a virtually identical position to those of the undersigned defendants. The plaintiffs' child was disciplined for using nasty language, disobedience, throwing snowballs and pushing other children. The child was disciplined, including, but not limited to a 10 day suspension (the plaintiff in the instant case was suspended for one day). The plaintiff's equal protection claim was <u>also</u> based on the contention that other students similarly situated received different treatment from the defendants than the plaintiff's child did.

The District Court granted qualified immunity as to the school officials, under the rationale that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken '**with independence and without fear of consequences**,'" citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d. 396 (1981). The court pointed out that the qualified immunity

doctrine "gives ample room for <u>mistaken</u> judgments," by protecting "all but the plainly incompetent or those who knowingly violate the law."  In <u>Jensen</u>, qualified immunity was said to be an immunity from being sued, rather than a mere defense to liability and is effectively lost, if a case is erroneously permitted to go to trial.  <u>Id</u>., citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511 at 526 (1985).

In <u>Finkel v. Board of Education of Syosset Central School</u>, 386 F. Supp. $2^{d.}$ 119 (E.D.N.Y. 2005), a middle school student was suspended for 30 days, for inappropriate writing and communications to classmates, involving threats of violence.  He was expelled.  In support of a selective treatment claim, plaintiff alleged (as the instant plaintiff, Alyssa Wright alleges) that other students attending the middle school, who engaged in similar or more severe conduct, including actual threats of violence, received suspensions of a lesser duration.  <u>Id</u>. at p. 128.  The court concluded that the plaintiff's allegations gave rise to qualified immunity, because the conduct did not violate any clearly established statutory or constitutional rights, of which a reasonable person would have known.  <u>Id.</u> at p. 131

In the very recent Connecticut District Court case of <u>Smith v. Guilford Board of Education, et al</u>, the plaintiff alleged bullying and harassment by classmates, in high school, from September 2001 through January 2002.  Judge Edginton was called upon to determine whether, under pre-existing law, a reasonable defendant would have understood that his or her acts were unlawful, (<u>Id</u>., citing <u>Jermosen v. Smith</u>, 945 F. 2d. 547 at 550 (2nd Cir. 1991).  While the court did not decide whether any right of the plaintiff was clearly established, the court did

take notice of the fact that the defendants <u>would</u> be protected from suit, for violation of any constitutional right, where defendants' conduct was objectively reasonable.

For all the foregoing reasons this Motion for Summary Judgment should be granted.

>
> DEFENDANTS, Patric DelCioppo, Irene D. Turek, Thomas M. Smyth, Jr. & Wolcott Board of Education
>
> By_____
> Jeffrey G. Schwartz
> LAW OFFICES OF SCOTT B. CLENDANIEL
> P.O. Box 2138
> Hartford, CT  06145-2138
> 860-277-7480
> Federal Bar:  CT 00534

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed on 1/18/06 to:

John R. Williams, Esq.
50 Elm Street
New Haven, CT  06510

> _____
> Jeffrey G. Schwartz