UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALYSSA A. WRIGHT | : | |
| | : | |
| VS. | : | |
| | : | NO. 3:02cv1398(AWT) |
| PATRIC DelCIOPPO, | : | |
| IRENE D. TUREK, | : | |
| THOMAS M. SMYTH, JR. and | : | |
| WOLCOTT BOARD OF EDUCATION | : | APRIL 9, 2007 |

**TRIAL MEMORANDUM**

**(1)     TRIAL COUNSEL**

**For the Plaintiff**

John R. Williams
Joseph M. Merly
Rob A. Serafinowicz
51 Elm Street
New Haven, CT 06510
203-562-9931
Fax: 203-776-9494
jrw@johnrwilliams.com
jmerly@johnrwilliams.com
rserafinowicz@johnrwilliams.com

**For the Defendants**

Jeffrey G. Schwartz
P. O. Box 2138
Hartford, CT 06145-2138
860-277-9421
Fax: 860-277-9438
jschwart@travelers.com

**(2)    JURISDICTION**

The basis for the court's subject matter jurisdiction is Sections 1331, 1343(3) and

1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States

Code.

**(3)    JURY-NONJURY**

This is a jury case.

**(4)    NATURE OF CASE**

This is a civil rights action by a former high school student, alleging the violation

of her Fourteenth Amendment right to equal protection of the laws.  She

contends that she suffered disparate treatment when she reacted to a pattern of

race-based harassment by a fellow student of another race.

(5)   **STIPULATIONS OF FACT AND LAW**

    A.   <u>**Stipulations of Fact**</u>

        1.   The plaintiff was a senior at Wolcott High School in Wolcott, Connecticut.

        2.   The plaintiff was born on April 13, 1984.

        3.   The plaintiff is Caucasian.

        4.   The plaintiff graduated from Wolcott High School in June of 2002.

        5.   The defendant DelCioppo was an assistant principal at the Wolcott High School.

        6.   The defendant Turek was the principal of the Wolcott High School

        7.   The defendant Smyth was the Wolcott Superintendent of Schools.

        8.   The defendant Wolcott Board of Education was a governmental entity in the State of Connecticut in charge of the public schools of the Town of Wolcott, and was the employer of the other defendants.

        9.   All of the defendants were acting in their official capacities and under color of law.

B.    **Stipulations of Law**

1.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits public officials like the defendants from treating similarly situated persons differently because of their race.

2.    Section 1983 of Title 42 of the United States Code provides that any person who, under color of law, subjects a person to disparate treatment in comparison to another similarly situated person because of her race shall be required to pay compensatory damages to the person discriminated against.

3.    Section 1983 of Title 42 of the United States code further provides that any individual defendant who has subjected a person to disparate treatment in comparison to another similarly situated person because of her race may be required to pay punitive damages to the person discriminated against if his actions were taken in reckless disregard of the constitutional rights of the victim whether or not those actions were intentional.

4

**(6)    PLAINTIFF'S CONTENTIONS**

The plaintiff was a senior at Wolcott High School in Wolcott, Connecticut. The plaintiff was born on April 13, 1984, she is a Caucasian, and she graduated from Wolcott High School in June of 2002.  The defendant DelCioppo was an assistant principal at the Wolcott High School, the defendant Turek was the principal of the Wolcott High School, and the defendant Smyth was the Wolcott Superintendent of Schools.  All of these defendants were acting in their official capacities but all are sued only in their individual capacities.  The defendant Wolcott Board of Education was a governmental entity in the State of Connecticut in charge of the public schools of the Town of Wolcott, and was the employer of the other defendants.

The plaintiff was at all times an outstanding honor student at Wolcott High School, a credit to both herself and her school, and never a disciplinary problem. During the plaintiff's senior year, she became the target of racial harassment and abuse by certain African-American girls who also were students at the school. Beginning in February of 2002, these girls on a daily basis described the plaintiff to her face as "stupid white girl," "ugly white girl," and "stupid white bitch."  This racist abuse and harassment of the plaintiff was actively encouraged, sponsored and supported by Mr. Pape, a teacher at the Wolcott High School.  The defendants, at various times during the school year, came to have actual

5

knowledge of the said racial harassment of the plaintiff and of the fact that their

agent, servant and employee, Mr. Pape, was encouraging, supporting, and

indeed even inciting such harassment.  On March 27, 2002, at Wolcott High

School, the plaintiff was the victim of a racially-motivated physical assault by two

of the African-American girls who had been harassing her throughout the school

year.  Calling the plaintiff a "stupid white girl," they struck the plaintiff from behind

causing her to fall to the floor and sustain physical injuries.  As her assailants

walked away laughing following the said assault, the plaintiff quietly uttered a

racial epithet.  One of the assailants then screamed at the plaintiff:  "I will kill you,

you stupid white bitch!"  All of the above facts were promptly brought to the

attention of the defendants.  A meeting between the plaintiff and Laurana

Joyner, one of the two assailants, took place in the office of defendant

DelCioppo within minutes following the incident described above.  At that

meeting, both girls confirmed all of the above facts to defendant DelCioppo.

Joyner stated to DelCioppo in the presence of the plaintiff that she hates the

plaintiff because the plaintiff "is not urban and is an ugly white girl."  Joyner

further confirmed to DelCioppo that her hatred of the plaintiff was related to an

incident involving Mr. Pape in which Pape had participated with the African-

American girls in spraying a tomato on the plaintiff in the cafeteria and the

plaintiff told Pape he was being immature.  Joyner told DelCioppo that she and

6

her friends were angry at the plaintiff because she had "embarrassed" Pape. Joyner further stated to the plaintiff in DelCioppo's presence: "I will call all my urban friends and they will come here and kick your ass."  In response, the defendants later on the same day suspended the plaintiff, and only the plaintiff, from school.  They ordered her to leave the school premises immediately and threatened her with arrest for "a hate crime."    Later that day, defendant DelCioppo stated to the plaintiff's mother that he considered the incident in which the plaintiff was sprayed with tomato juice by Mr. Pape and the African-American girls to be "humorous", stated not only that he had no intention of taking any action against anyone other than the plaintiff but that he considered that he had "the upper hand here" and that anything the plaintiff might say would be "taken with a grain of salt" and disregarded.  All of the above facts were promptly thereafter brought directly to the attention of the defendant Smyth and the defendant Board of Education, and said defendants endorsed, ratified and confirmed the disparate treatment of the plaintiff described above.

Upon the plaintiff's return to school following her suspension, the racial harassment to which she had been subjected continued.  Her assailants, despite the promise of the defendant Turek that they would be separated from the plaintiff, continued to approach and intimidate the plaintiff.  For a period of several days in May, the phrases "Alyssa Wright is a racist bitch who deserves to

7

be shot" an "I hate Alyssa Wright" were written in plain view of all students and faculty in the high school lecture hall.  Although these facts also were brought to the attention of the defendants, no action whatsoever was taken to punish the perpetrators.

**(7)    DEFENDANTS' CONTENTIONS**

The defendants deny wrongdoing and claim they treated everyone equally.

**(8)    LEGAL ISSUES**

      1.    Did the defendants violate the plaintiff's Fourteenth Amendment right to equal protection of the laws?

**(9)    VOIR DIRE QUESTIONS**

1.  This is a lawsuit for civil rights violations brought by a former high school student against school officials.  The plaintiff, who is white, claims she was the victim of racial discrimination.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2.  Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

3.  Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against police officers?  If so, please explain.

4.  Have you or anyone close to you ever been employed as a teacher or by any public school in any capacity?  If so, please explain.

5.  Have you or anyone close to you ever been employed by any municipality in the State of Connecticut?

6.  Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.  Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

8.  Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.  Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.  Has anyone here or any close to you ever been employed by an attorney?

11.  Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.  Have you, or has anyone close to you, ever been a party to a lawsuit?

If so, please explain.

      13.  Where are you employed?

**(10)   LIST OF WITNESSES**

      **A.**     **For the Plaintiff:**

        1.      The plaintiff will testify to all allegations set forth in her Complaint.

        2.      Defendant Delcioppo will testify to his role in the events at issue.

        3.      Defendant Turek will testify to her role in the events at issue.

        4.      Defendant Smyth will testify to his role in the events at issue.

        5.      Starrett Ash, 120 Straitsville Road, Prospect, CT, will testify concerning his observations of the incidents in question.

        6.      Aaron Grechko, 642 Boundline Road, Wolcott, CT, will testify concerning his observations of the incidents in question.

        7.      Stephanie Falco, 6 Harrison Road, Wolcott, CT, will testify concerning her observations of the incidents in question.

        8.      Krista Boutole, 24 Steele Avenue, Wolcott, CT, will testify concerning her observations of the incidents in question.

        9.      Nicole Nicoletti, 75 Deepwood Drive, Wolcott, CT, will testify concerning her observations of the incidents in question.

        10.    Dr. Paul M. DiDomizio, 444 Wolcott Road, Wolcott, CT, will testify concerning his observations and treatment of the plaintiff.

11.    Robert Wright, 14 Church Drive, Wolcott, CT, will testify concerning his interactions with and observations of the plaintiff, the individual defendants, and members of the defendant Board of Education.

12.    Jennifer Wright, 14 Church Drive, Wolcott, CT, will testify concerning her observations at the school and to statements by the defendants.

13.    Christine Wright, 14 Church Drive, Wolcott, CT, will testify concerning her interactions with and observations of the plaintiff, the individual defendants, and members of the defendant Board of Education.

14.    Michael J. Santogatta, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

15.    Anthony F. Gugliotti, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

16.    Kathleen Halpin, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

17.    Michael Carrah, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

18.    James Cosgrove, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

19.    Jacqueline Dawiczyk, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

11

20.    Albert V. DellaVolpe, Jr., 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

21.    Patricia Najarian, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

22.    Ralph Shove, 154 Center Street, Wolcott, CT, will testify concerning the actions and deliberations of the defendant Board of Education concerning this case.

**B.    For the Defendants**

The defendants have not yet identified any witnesses.

**(11)    EXHIBITS**

**A.    For the Plaintiff**

1    Disciplinary Referral dated 3/27/02 including subsequent disposition

2    Report of Parent Conference dated 4/1/02

3    Sworn statement in Wolcott Police Incident 02-4594, dated 4/9/02

4    Report of Parent Conference dated 1/19/02

5    Plaintiff's school records

6    Connecticut Department of Education Circular Letter C-14 dated January 8, 2002

7    Report of Dr. Paul M. DiDomizio dated April 11, 2002

| 8 | Letter from Mr. and Mrs. Robert Wright to defendant Board of Education, dated April 22, 2002 |
|---|---|
| 9 | Letter to Mr. and Mrs. Robert Wright from defendant Smyth dated May 1, 2002 |
| 10 | Letter from Mr. and Mrs. Robert Wright to defendant Board of Education, dated May 3, 2002 |
| 11 | Letter to Mr. and Mrs. Robert Wright from Michael J. Santogatta and defendant Smyth dated May 16, 2002 |
| 12 | Letter from Mr. and Mrs. Robert Wright to defendant Board of Education dated May 20, 2002 |

**B    For the Defendants**

The defendants have not yet identified any exhibits.


**(12)    DEPOSITION TESTIMONY**

None.


**(13)    REQUESTS FOR JURY INSTRUCTIONS**

1.  The plaintiff has brought this lawsuit to obtain redress for what she contends were violations of her right under the United States Constitution to equal protection of the laws.  Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of her constitutional rights.  "Acting under color of law" means "under pretense of law," and simply

13

means acting in one's capacity as, in this case, public school officials.  In this

case, the plaintiff has met her burden of proving that the defendants acted under

color of law, so you need not concern yourselves with that issue.  [Monroe v.

Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994);

Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d

438, 441 (6th Cir. 1975).]

     2.  It is not necessary to find that the defendants had any specific intent

to deprive the plaintiff of her civil rights in order to find in favor of the plaintiff.

The plaintiff is entitled to relief if the defendants intended the actions which

resulted in the violation of the plaintiff's rights or if the defendants acted in

reckless disregard of the plaintiff's rights.  Reckless disregard of the plaintiff's

rights simply means not caring whether or not those rights were being violated.

[Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod,

871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir.

1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers,

J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of

Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521,

528 (D. Conn. 1993) (Cabranes, J.).]

     3.  If you find that any defendant is liable to the plaintiff on any of the

grounds advanced in this lawsuit, you should then consider the question of

damages.  There are essentially two kinds of damages which can be awarded in a lawsuit -- compensatory damages and punitive damages.  Compensatory damages are designed to compensate the plaintiff for injuries suffered by the plaintiff.  These injuries include money actually spent or debts incurred as a result of the injury, as well as emotional anguish, impairment of reputation, personal humiliation, and other suffering.  In fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which was proximately caused by the wrongful conduct of any defendant.  Actual loss is not limited to expenses or debts incurred.  Injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation. You should award damages in such a case to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated.  The damages you award should be proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of loss I have previously discussed with you.  [Memphis Community School District v. Stachura, 477 U.S. 299 (1986); Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35

Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d

234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992).]

     5.  You may also decide whether the plaintiff is entitled to the award of

any punitive damages against any of the individual defendants.  In a case like

this one, you may consider whether acts or omissions of the defendant, if you

find them to have been proved, were so serious that the defendant should pay a

penalty so that in the future others will be deterred from engaging in the same

conduct.  Whether you decide to award any punitive damages should be based

on whether you find that the defendant engaged in any one of the following

things:

     1)  Willful or malicious violation of the constitutional rights of the plaintiff;

     2)  Any intentional act by the defendant in gross disregard of the rights of

the plaintiff;

     3)  Reckless disregard by the defendant of whether or not he was violating

the rights of the plaintiff.

If you find any one of these three things to have been proven, then you should

award punitive damages.  [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board

of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907

(2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v.

City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard,

919 F.2d 665, 670-73 (11th Cir. 1990).]

6.  The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community. In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case.  These factors include the behavior of the defendant at trial and his or her apparent lack of genuine repentance for the misconduct in question, if you find such to be the case.  [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

7.  When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants.  The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another.  Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages.  All

17

those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him.  Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.  [Prosser, Law of Torts, Section 46, pp. 291-95 (4th Ed. 1971); Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982).]

8.  The issue in this case is whether the defendants violated the plaintiff's right to equal protection of the laws under the federal constitution.  The equal protection clause of the fourteenth amendment requires that all persons similarly situated must be treated alike by the government and by government officials. Selective or different enforcement of otherwise constitutional rules on the basis of unreasonable or prohibited distinctions violates the right to equal protection if that selective or different enforcement is intentional and without any rational basis, or if it is based on unlawful distinctions such as race, an intent to inhibit or punish the exercise of constitutional rights like the right to free speech, or merely on a malicious or bad faith desire to injure a particular person.  If you find that any defendant subjected the plaintiff to different or selective enforcement or application of school rules or policies, and if you further find that different or selective enforcement was intentional and irrational, or if you find that it was based on the plaintiff's race, or on malice or bad faith, then you must return a

18

verdict in favor of the plaintiff on her equal protection claim.  [Village of

Willowbrook v. Olech, 528 U.S. 562 (2000); LeClaire v. Saunders, 627 F.2d 606,

609-10 (2d Cir. 1980); Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996);

LaTrieste Restaurant and Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587

(2d Cir. 1994); Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir.

1994); FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir. 1992).]


**(14)  ANTICIPATED EVIDENTIARY PROBLEMS**

None.


**(15)  PROPOSED FINDINGS AND CONCLUSIONS (for nonjury cases)**

Not applicable.


**(16)  TRIAL TIME**

Three to four days.


**(17)  FURTHER PROCEEDINGS**

None.


**(18)  ELECTION FOR TRIAL BY MAGISTRATE**

No objection.

THE PLAINTIFF


BY:_____/s/_____
         JOHN R. WILLIAMS (ct00215)
         51 Elm Street
         New Haven, CT 06510
         203/562-9931
         Fax:  203/776-9494
         jrw@johnrwilliams.com
         Her Attorney


<u>CERTIFICATION OF SERVICE</u>

On the date above stated, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


_____/s/_____
JOHN R. WILLIAMS